FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ MAR 2 2020 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

**FRED HARRIS,**

*Petitioner,*

– against –

**GREAT MEADOW CORRECTIONAL
FACILITY,**

*Respondent.*

------------------------------------------------------------- X

**MEMORANDUM
DECISION & ORDER**

17-CV-00760 (AMD)

**ANN M. DONNELLY**, United States District Judge:

The *pro se* petitioner, currently incarcerated at Great Meadow Correctional Facility,

petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.) The petitioner

was convicted after a jury trial of Attempted Murder in the Second Degree, Assault in the First

Degree, and Criminal Possession of a Weapon in the Second Degree. He was sentenced to an

aggregate term of thirty years, which the appellate court later reduced to twenty-five years.

The petitioner makes multiple challenges to his conviction. He faults the way the trial

judge conducted jury selection, says that the judge should not have removed the petitioner from

the courtroom, complains about the jury instructions, and criticizes the court's suppression

decision—which was favorable to the petitioner. The petitioner also attacks the sufficiency of

the evidence and argues that the prosecutor made improper comments in summation. Finally, he

says that his trial and appellate lawyers were ineffective, and that he was not competent to stand

trial.[1] For the reasons that follow, the petition is denied.

---

[1] Federal courts do not re-examine determinations of state courts on state law issues raised in a habeas
petition, but can consider federal constitutional or statutory claims. *See Guerrero v. Lamanna*, 325 F.
Supp. 3d 476, 483 (S.D.N.Y. 2018) (citing 28 U.S.C. § 2254(a)). A federal court reviewing a petitioner's
detention determines whether the detention is unconstitutional. Therefore, I do not consider the
petitioner's state constitutional claims.

## FACTUAL BACKGROUND[2]

### I. Overview

On the night of May 24, 2009, Deshawn Leggett and Gary Walls, Sr. were driving in Brooklyn with family members, including two small children, when the petitioner shot Walls in the face. Walls survived the shooting, but suffered serious and disfiguring injuries, which required multiple surgeries. Part of the shooting was captured on videotape; the police identified and arrested the petitioner about a month after the shooting. (ECF. No. 9-1 at 306-310; 388-390.) While the petitioner was in custody on Rikers Island, he made recorded telephone calls in which he admitted that video recordings showed him "pointing a hammer" but "[did not] show [him] shooting . . . you can't see the main shit." (*Id.* at 413, 657.)

The petitioner was charged with Attempted Murder in the Second Degree (N.Y. Penal Law §§ 110.00, 125.25[1]), Assault in the First Degree (N.Y. Penal Law § 120.10[1]), and Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03[3]). (*Id.* at 602.)

Prior to trial, the petitioner moved to suppress his post-arrest statements. (ECF No. 14.) The Honorable Joel Goldberg granted the motion. (*Id.* at 1308:13-25.)

### II. The Trial

#### A. The Prosecution's Case

The petitioner's trial began on January 18, 2011. The prosecution called seven witnesses: Deshawn Leggett, Gary Walls, Kumardatt Persaud, Dr. William White, Willard Fulton, Officer Erik Malak, and Detective Rodrigo Fonteboa. The prosecution established the following facts.

---

[2] Because the petitioner was convicted, the facts are summarized in the light most favorable to the verdict. *See Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012).

On the evening of May 24, 2009, Gary Walls and his cousin Deshawn Leggett were driving home from a Memorial Day barbecue in Harlem. Leggett was driving and their two children and another friend, Lonnie Kimbrough, were in the back seat. (ECF No. 9-1 at 253:8-14, 434:1-20.) When they reached Brooklyn, they stopped at the corner of Humboldt and Moore Street and called a friend who lived in the area. (*Id.* at 253:12-14, 434:7-9.) Leggett noticed a group of people standing on the sidewalk close to the rear passenger side of their car. (*Id.* at 261.) A light-skinned black man—later identified as the petitioner's co-defendant, Powerful Williams—was "staring" at the car. (*Id.* at 269:23-24.)[3] The group split up, and some of them, including Williams, headed into 130 Moore Street, but Williams continued to look at the car. (*Id.* at 271:4-272:19, 280-281, 438-439, 439:22-440:19.)

About a minute later, Walls and Leggett heard gunshots. (*Id.* at 281:13-22, 441:3-12.) As Leggett drove towards the rear entrance of the building, the petitioner scame from the rear door, extended his arm and fired at the car, shooting Walls in the face. (*Id.* at 288:1-20, 340:21-25.)

The bullet shattered Walls' nose and jaw and lodged in the base of his skull under his right ear. (*Id.* at 233:1-23.) Walls told Leggett, "I'm hit in my face . . . drive off. Drive off." (*Id.* at 106:19-20, 260:15-26.) Leggett immediately drove Walls to the emergency room at Woodhull Hospital. (*Id.* at 446:5-8.)

About an hour after the shooting, Detective Rodrigo Fonteboa went to the emergency room to speak with Walls and the two other men in the car. (*Id.* at 305-306.) Following those conversations, Detective Fonteboa returned to Bushwick Houses to search for evidence. (*Id.* at 306:9-22.) He noticed surveillance cameras near the location of the shooting. (*Id.* at 307:17-

---

[3] Williams pleaded guilty to Attempted Murder in the Second Degree and was sentenced to five-and-a-half years in jail. (ECF No. 9-2 at 766.) The trial judge precluded any mention of the plea.

3

308:2.) He collected the video footage on May 27, 2009 from Kumardatt Persaud, a representative of the New York City Housing Authority. (*Id.* at 480-481, 483-484.)

The video from 130 Moore Street showed the petitioner and Williams going into 130 Moore Street and walking towards the back of the building (*Id.* at 427-428), and the petitioner stepping outside of the building while Williams held the door. The petitioner raised his arm, fired a gun, and went back inside. (*Id.* at 338-345.) The petitioner and Williams walked to 140 Moore Street; video shows the petitioner in the lobby, his face clearly visible, wearing a white t-shirt, white baseball cap, and black pants, the same clothing worn by the shooter. (*Id.* at 347:22-348:9, 383:20-386:8.)

Detective Fonteboa identified the petitioner as the shooter, and Powerful Williams as the man that Walls and Leggett saw right before the shooting. (*Id.* at 389:6-390:11, 413:10.) Detective Fonteboa issued wanted cards for the petitioner and Williams. (*Id.* at 389:13-18.)

On June 17, 2009, Officer Erik Malak was on patrol near 130 Moore Street when he saw the petitioner, whom he recognized from the wanted card, walking into 130 Moore Street. (*Id.* at 420:7-423:25.) He and his partner followed the petitioner to a sixth-floor apartment. The officers radioed their lieutenant, who arrived with two other officers. They knocked on the apartment door; the woman who answered let them search the apartment. The officers found the petitioner hiding in a bedroom and arrested him. (*Id.* at 424:18-429:23.)

While the petitioner was awaiting trial in Rikers Island, he made recorded telephone calls in which he spoke about the shooting. He admitted that the surveillance video showed him "pointing a hammer" but "[d]on't show me shooting . . . you can't see the main shit." (*Id.* at

596:16-17, 462:6-8, 465:15-16.)[4] He also admitted that the video showed him holding a gun, but not firing it. (*Id.* at 462:2-22, 465:5-23, 468-470.)

Walls was transferred to Bellevue Hospital, where he had surgery to reconstruct his face, nose, and cheekbone. (*Id.* at 446:17-18.) Surgeons wired his jaw shut and inserted metal plates and bars under his eye, mouth and nose. (*Id.* at 447:1-10.) He also had surgery to repair his eye. (*Id.* at 447:3-25.) Walls could not work or eat solid food for a month and a half. (*Id.* at 447:3-450:3.)

The petitioner interrupted the trial multiple times; he shouted out in front of the jury and argued with his attorney and with the judge. Judge Goldberg warned that he would remove the petitioner, but the petitioner continued to interrupt the proceedings. Judge Goldberg directed court officers to take the petitioner to a holding cell behind the courtroom, but the petitioner shouted so loudly that he could be heard in the courtroom. (*Id.* at 398:21-22.) When the petitioner refused to say whether he would comply with the court's directives, wanted to be kept in the back—where he could hear the proceedings—or return to the holding cells, the judge had him taken down to the holding cells. (*Id.* at 399-401.) Judge Goldberg noted the petitioner "appeared to understand every word that [the court] was saying. It is not that he was incapable of understanding what I was saying." (*Id.* at 401:24-402:4.)

## B. The Defense's Case

The petitioner testified in his own defense.[5] On the day of the shooting, he heard gunshots while he was in the back of 130 Moore Street. (*Id.* at 546:17-23.) He admitted that the

---

[4] At trial, Detective Fonteboa testified that "hammer" is slang for gun. (*Id.* at 525:19-23.)
[5] Defense counsel told the court that he had advised the petitioner not to testify because "it is not in his best interest to testify at this trial," and that the petitioner "is going against my advice." (*Id.* at 536:12-15.) In addition, counsel alerted the court that he could not ask the petitioner individual questions, but was compelled to ask the petitioner to describe what happened in narrative form. (*Id.* at 538:11-16.)

surveillance videos from inside 130 Moore Street showed him and Williams. He also

acknowledged that he was holding something and pointing it; he claimed, however, that the item

was not a gun, but a cloth which he held as though it were a gun in order to scare off the real

shooter. (*Id.* at 546:24-547:19; 559:9-560:25.)

At several points during the trial, the petitioner told Judge Goldberg he wanted a new

lawyer; he complained that counsel was "not working in [his] best interest" because counsel

would not make the arguments or call the witnesses that the petitioner wanted. (ECF No. 9-6 at

980-982.)[6] Judge Goldberg denied the application.[7]

### C. Verdict and Sentencing

The jury convicted the petitioner of all charges. At the March 8, 2011 sentencing

proceeding, Judge Goldberg described the petitioner as "a dangerous, dangerous person," whose

testimony was "absurd" and "an insult to everybody in this courtroom and an insult to justice."

(ECF No. 9-1 at 750:18-25.) Judge Goldberg sentenced the petitioner to a prison term totaling

thirty years: concurrent terms of twenty-five years on the attempted murder and assault charges,

and fifteen years on criminal possession of a weapon, with five years of that sentence to run

consecutive to the twenty-five-year term. (*Id.* at 751:4-752:15.) Judge Goldberg resentenced the

petitioner on April 15, 2011. (*Id.* at 755-756.) Citing *People v. Bacalocostantis*, 148 A.D.2d

842, 843 (1989), in which the Third Department held that "a sentence split so that it is half

concurrent and half consecutive is not within the parameters of Penal Law § 70.25(1)," Judge

Goldberg resentenced the petitioner to an aggregate term of thirty years: consecutive fifteen-year

determinate terms for the attempted murder and weapon possession counts, to run concurrently

---

[6] For example, the petitioner wanted counsel to call an expert witness to establish that someone had
tampered with the surveillance tape. Counsel refused, based on his years of experience with "computers
and digital editing." (ECF No. 9-6 at 980:9-981:11.)
[7] Trial counsel was the petitioner's second appointed attorney.

6

with a twenty-five year determinate term for the assault count, and 5 years' post-release supervision. (*Id.* at 755:3-758:25.)

## PROCEDURAL HISTORY

The petitioner, represented by counsel, appealed his conviction to the Appellate Division, Second Department. (*See* ECF No. 9-2.) The petitioner claimed that the trial court should not have excused prospective jurors on the basis of hardship without questioning them individually. (*Id.* at 782-92.) The petitioner also challenged the jury charge, maintaining that the judge amended the indictment—which charged the petitioner with intending to kill or injure Gary Walls—by instructing the jury that the prosecution did not need to prove that the petitioner intended to kill or injure any specific person. (*Id.* at 792-801.) The petitioner also challenged his sentence as excessive and argued that the consecutive prison terms were illegal. (*Id.* at 801-05.)

The Appellate Division affirmed the petitioner's conviction, rejecting the petitioner's complaints about the jury charge and the jury selection process as both unpreserved and meritless. *People v. Harris*, 115 A.D.3d 761, 762 (2d Dep't 2014). The Appellate Division modified the sentences on the gun possession and attempted murder convictions to run concurrently because the prosecution had not proven that "the defendant's possession of a gun was separate and distinct from his shooting of the victim." *Id.* at 763.

The Court of Appeals denied the petitioner's application for leave to appeal on August 14, 2014, *People v. Harris*, 23 N.Y.3d 1062 (2014), and his *pro se* motion for reconsideration on December 3, 2014. *People v. Harris*, 24 N.Y.3d 1084 (2014). The Appellate Division denied the petitioner's subsequent *pro se* motion to reargue his appeal. *See People v. Harris*, 2015 NY Slip. Op. 75977(U) (2d Dep't 2015).

On August 7, 2015, the petitioner moved *pro se* before Judge Goldberg pursuant to N.Y. C.P.L. § 440.10 to vacate his conviction. (ECF No. 9-6 at 865-1059.) The petitioner renewed the argument he made in the Appellate Division—that the court amended the indictment by charging the jury that the prosecution did not have to prove intent to kill a particular person. (*Id.* at 904-908.) He also challenged the court's evidentiary rulings, claimed his lawyer was ineffective, claimed he was not competent to stand trial, complained about the prosecutor's summation and argued that the prosecutor did not provide timely discovery. (*Id.* at 865-915.)

On December 10, 2015, Judge Goldberg denied the petitioner's motion. *People v. Harris*, Ind. No. 5515/2009 (N.Y. Sup. Ct. Dec. 10, 2015) (ECF No. 9-8.). Aside from the competency and some of the ineffective assistance claims, "the remainder of his claims are based upon the record of the proceedings and must be denied, pursuant to CPL 440.10(2)(c), because they were sufficiently on the record to have been reviewed on his direct appeal." (ECF 9-8 at 1074.) In fact, the petitioner raised the claim about the court's charge in the Appellate Division, which rejected it, providing another basis to deny the claims. (*Id.*) The trial court also rejected the petitioner's complaints about his counsel, finding that some of the claims could have been raised on direct appeal and that the claims were otherwise meritless. (*Id.*)

Finally, Judge Goldberg dismissed the claim that the petitioner was incompetent. The petitioner "failed to show that he had been unable to understand the trial proceedings or to assist in his defense." (*Id.* at 1078.) To the extent the petitioner claimed he was innocent, "his motion fails to establish his actual innocence by clear and convincing evidence." (*Id.* at 1074.)

The petitioner moved for leave to appeal, which the Appellate Division denied, *People v. Harris*, No. 2016-00480, 5515/09, 2016 WL 3945416 (2d Dep't July 22, 2016), and the Court of Appeals denied leave to appeal. *People v. Harris*, 28 N.Y.3d 1028 (2016) (Abdus-Salaam, J.).

8

The Court of Appeals also denied the petitioner's motion for reconsideration. *People v. Harris*, 28 N.Y.3d 1145 (2017).

On February 6, 2017, the petitioner filed this *pro se* petition for a writ of habeas corpus. (ECF No. 1.)

## LEGAL STANDARD

A federal court reviewing a habeas petition must not "review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). This doctrine applies to both substantive and procedural state law grounds. *Id.* at 729-30.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires a federal court reviewing a state prisoner's habeas petition to give deference to a state court's decision on the merits. *See* 28 U.S.C. § 2254(a). A federal court may not issue a writ of habeas corpus unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Johnson v. Williams*, 568 U.S. 289, 292 (2013); *Chrysler v. Guiney*, 806 F.3d 104, 116-17 (2d Cir. 2015).

For the purposes of federal habeas review, "clearly established law" means "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" or an "unreasonable application of" clearly established law if the decision: (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different

than that reached by the Supreme Court on "materially indistinguishable" facts; or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case. *Id.* at 412-13. The court reviews the last reasoned state court decision. *Ylst v. Nunnemaker,* 501 U.S. 797, 804 (1991); *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir. 2000). The state court's factual determinations are presumed to be correct, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A petitioner can seek federal habeas corpus relief only after he exhausts state court remedies and gives the state courts a fair and full opportunity to review the merits of the claim. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel,* 526 U.S. 838, 842 (1999). In other words, a petitioner must present "the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it." *Jackson v. Conway,* 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Rosa v. McCray,* 396 F.3d 210, 217 (2d Cir. 2005)).

## DISCUSSION

The petitioner raises many of the same arguments he raised in his direct appeal and his motion to vacate. For the reasons that follow, I reject the petitioner's arguments and deny his petition in its entirety.

### A. Dismissal of Potential Jurors

During *voir dire*, the trial judge asked the pool of potential jurors whether jury service would be a "personal hardship" because of family or business obligations. (ECF No. 12-1 at 1122:1-1123:25.) Two prospective jurors raised their hands and were excused, without objection from either side. The petitioner claims that this was error. The Appellate Division rejected this claim on the merits and as unpreserved. *People v. Harris,* 115 A.D.3d 761, 762 (2d Dep't 2014), *lv. denied,* 23 N.Y.3d 1062 (2014).

"[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990); *see also* CPL § 470.05(2). Federal courts do not "review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." *Cone v. Bell*, 556 U.S. 449, 465 (2009). New York's contemporaneous objection rule "is a firmly established, independent, and adequate state ground that bars habeas review of the merits of a constitutional claim." *Williams v. Artus*, 691 F. Supp. 2d 515, 524 (S.D.N.Y. 2010). Because the Appellate Division rejected this claim on procedural grounds—the failure to object—the petitioner cannot obtain habeas relief. The petitioner does not demonstrate cause for the procedural default, nor would denying his claim result in a fundamental miscarriage of justice. *See Harris v. Reed*, 489 U.S. 255, 262 (1989); *Parks v. Sheahan*, 104 F. Supp. 3d 271, 282 (E.D.N.Y. 2015).

Moreover, the Appellate Division's decision to reject the petitioner's argument on the merits was not "contrary to, or . . . an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d); *see, e.g.*, 28 U.S.C. § 1863(b)(5) (permitting courts to pre-screen jurors by "class or group" to determine if serving on the jury "would entail undue hardship or extreme inconvenience"). Nor was it "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Johnson*, 568 U.S. at 292; *Chrysler*, 806 F.3d at 116-17. The petitioner's claim is therefore denied.

B. Amendment of the Indictment

The petitioner argues that the trial court improperly amended the indictment by

instructing the jurors that the prosecution was not required to prove that the petitioner targeted the victim or "any particular person." (ECF No. 9-1 at 686:8-11.)

This claim is also procedurally barred, because counsel did not object on this ground. The Appellate Division found that the claim was "unpreserved for appellate review." *People v. Harris*, 115 A.D.3d 761, 762 (2d Dep't 2014). The petitioner does not demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law, or . . . that failure to consider the claims will result in a fundamental miscarriage of justice." *Azaz v. Artus*, No. 09-CV-3857, 2011 WL 9368971, at *8 (E.D.N.Y. Nov. 2, 2011), *report and recommendation adopted*, No. 09-CV-03857, 2012 WL 5289519 (E.D.N.Y. Oct. 19, 2012).

Nor can the petitioner's argument succeed on the merits. Even if Judge Goldberg had misstated the law—and he did not—a state court's jury instruction on a question of state law does not present a question of federal law. "[T]he fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief." *Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991). "Before a federal court may overturn a conviction resulting from a state trial in which this instruction was used, it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant" by the federal constitution. *Cupp v. Naughten*, 414 U.S. 141, 146 (1973).

In any event, Judge Goldberg correctly described the law and did not amend the indictment. It is only when the court's instructions, combined with the evidence, modifies "'essential elements of the offense charged to the point that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged by the grand jury,'" that an indictment is amended constructively. *United States v. Vebeliunas*, 76 F.3d 1283,

1290 (2d Cir.1996) (quoting *United States v. Clemente*, 22 F.3d 477, 482 (2d Cir. 1994)). If a constructive amendment affects an "essential element[]" of the charged conduct, it is a "per se violation[] of the Fifth Amendment that require[s] reversal even without a showing of prejudice to the defendant." *Id.* at 1290 (citation and original alternations omitted).

That is not what happened here. The petitioner was charged in the indictment with attempted murder "with intent to cause the death of Garry [*sic*] Walls Sr. . . . by means of a dangerous instrument," or assault "with intent to cause physical injury to Garry [*sic*] Walls Sr. by means of a deadly weapon . . . ." (ECF No. 9-3 at 835.) Judge Goldberg charged the jury that "it is not required that the person who is injured, or killed, be the same person whose death was intended to be caused, or that [the petitioner] had an intent to cause the death of any particular person" (ECF No. 9-1 at 686:8-11), and, "just as with attempted murder, it is not required that the person who is injured be the same person who is intended to be injured, or that [the petitioner] had an intention to injure any particular person." (*Id.* at 690:3-6.) Because the victim's identity is not an element of either charge, this instruction did not amend the indictment. N.Y. Penal Law §§ 120.10[1], 125.25[1]; *see Fernandez v. Dufrain*, 11 F. Supp. 2d 407, 419 (S.D.N.Y. 1998) (attempted second-degree murder statute does not require actual injury to any particular person); *People v. Wells*, 7 N.Y.3d 51, 56-57 (2006) (identity of specific police officer that defendant intended to kill was not an element of attempted murder in the first or second degree); *People v. Rivera*, 268 A.D.2d 445, 445 (2d Dep't 2000) (identity of the intended target is not an essential element of first-degree assault). The Appellate Division rejected the petitioner's argument on the merits, finding that "the court's instructions were proper . . . the identity of the intended target is not an essential element of these crimes[.]" *People v. Harris*, 115 A.D.3d 761, 762 (2014). Thus, the petitioner's claim is denied.

## C. Excessive Sentence

The Appellate Division modified the petitioner's sentences to run concurrently, resulting in an aggregate term of twenty-five years. *Harris*, 115 A.D.3d at 762-63. The petitioner says that this is excessive. His claim is not cognizable on federal habeas review. It is well-settled that "no federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) (per curiam); *Veliz v. Griffin*, No. 17-CV-0824, 2017 WL 836560, at *3 (E.D.N.Y. Mar. 2, 2017) ("[W]hen a sentence falls within the range prescribed by state law, the length of the sentence may not be raised on habeas corpus review."). The petitioner's sentence was within the permissible statutory range. *See generally* N.Y. Penal Law §§ 70.02(1)(a), (3)(a), (3)(b), 120.10(1), 110.00/125.25(1), 265.03(3). Therefore, this claim is denied.

## D. Ineffective Assistance of Trial Counsel

The petitioner also argues, as he did on both direct appeal and in the C.P.L. 440.10 proceeding, that his trial lawyer was "so deficient as to amount to the substantial equivalent of no representation." (ECF No. 9-6 at 909.) The petitioner attacks his lawyer's strategy decisions, including the way he handled the hearing on his ultimately successful suppression motion, as well as other strategic decisions, including whether to call another passenger in the car and whether and when to object. (ECF No. 9-6 at 909-915.)

Judge Goldberg rejected all the petitioner's claims. First, the petitioner could have raised some of his claims on direct appeal, but did not, barring relief in state court. In any event, the petitioner "fail[ed] to allege sufficient facts to establish that any of these purported failures, considered individually or collectively, caused sufficient prejudice to warrant vacating the judgment . . . or deprived the defendant of meaningful representation" under *Strickland v.*

14

*Washington,* 466 U.S. 668, 687 (1984). (ECF No. 9-8 at 1078.)[8]  Moreover, the petitioner's

conviction "was supported by overwhelming evidence[,] including video surveillance recordings

of him firing a gun in the direction of the victim and incriminating statements he made in

recorded telephone calls from Rikers Island." (*Id.*)

Because the state court rejected the petitioner's complaints about his lawyer, the

petitioner must demonstrate that Judge Goldberg's decision was "contrary to, or involved an

unreasonable application of" federal law or was "based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see*

*Harrington v. Richter,* 562 U.S. 86, 100 (2011). The standard is meant to be an exacting one; the

petitioner must demonstrate that the state court's decision was "so lacking in justification that

there was an error well understood and comprehended in existing law beyond any possibility for

fairminded disagreement." *Harrington,* 562 U.S. at 102-03. The state court must be granted a

"deference and latitude that are not in operation when the case involves a review under the

*Strickland* standard itself." *Id.* at 101.

To establish ineffective assistance of counsel, the petitioner must demonstrate that his

counsel's performance fell below an objective standard of reasonableness under prevailing

professional norms, and that he was prejudiced by his counsel's deficient performance.

*Strickland v. Washington,* 466 U.S. 668, 687 (1984). The petitioner cannot meet the first part of

---

[8]  The petitioner blames his appellate counsel, but even if the petitioner had exhausted this claim,
appellate counsel's decisions not to pursue meritless claims falls well within "the wide range of
reasonable professional assistance." *Greiner v. Wells,* 417 F.3d 305, 319 (2d Cir. 2005) (quoting
*Strickland,* 466 U.S. at 690); *see also Turner v. Artuz,* 262 F.3d 118, 123-24 (2d Cir. 2001). The
petitioner "bears the burden of establishing both deficient performance and prejudice," standards he
cannot meet. *Fore v. Ercole,* 594 F. Supp. 2d 281, 302 (E.D.N.Y. 2009). The "process of 'winnowing
out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of
incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536
(1986) (quoting *Jones,* 463 U.S. at 751-52); *accord Sellan v. Kuhlman,* 261 F.3d 303, 317 (2d Cir. 2001).

the *Strickland* test merely by showing that his counsel employed a losing strategy or made a mistake; instead, the petitioner must establish that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *LanFranco v. Murray,* 313 F.3d 112, 118 (2d Cir. 2002) (citing *Strickland,* 466 U.S. at 689). The petitioner only can establish the prejudice prong of the *Strickland* test if there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Charles v. Fischer*, 516 F. Supp. 2d 210, 216 (E.D.N.Y. 2007) (quotation omitted). In applying the two-part test, "judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The relevant inquiry focuses "on the fundamental fairness of the proceeding whose results are being challenged." *Strickland*, 466 U.S. at 670.

Under this standard, the petitioner's claims fail on the merits, even if they were not procedurally barred. First, the petitioner criticizes his lawyer's approach to the hearing on his motion to suppress the petitioner's post-arrest statements to the police. It is difficult to see the point of this complaint, since counsel succeeded in getting the statements suppressed. (ECF No. 14 at 1284-1314.) In any event, the police clearly had probable cause to arrest the petitioner; he was captured on videotape shooting at the victim. *See Goodwine v. Lee*, No. 10-CV-6019, 2016 WL 6834017, at *3 (S.D.N.Y. Nov. 17, 2016) (denying habeas petition for ineffective assistance of counsel where petitioner's challenge to probable cause "had no reasonable probability of success").

The petitioner's complaints about his lawyer's trial tactics—cross-examination, whether to object, whether to call another passenger from the car as a witness—are no more persuasive.

(ECF No. 1 at 70-72.) These were strategic decisions well within the range of professional competence. Indeed, counsel mounted a vigorous defense; in addition to the successful suppression motion, counsel tried to establish that the petitioner was merely present at the shooting, and that someone else shot the victim. Counsel's decision not to call Lonnie Kimbrough, who was in the car during the shooting, was also a reasonable strategic choice. "The decision not to call a particular witness is typically a question of trial strategy that appellate courts are ill-suited to second-guess." *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998). Since Kimbrough told the police that he did not see who was firing the shots because everything "happened too fast," (ECF No. 9-6 at 951), he would not have been helpful to the defense. *See Krutikov v. United States*, 324 F. Supp. 2d 369, 371 (E.D.N.Y. 2004) (finding no error when counsel declined to call a witness because counsel did not believe the witness would be beneficial to the defense). Counsel's decision was "within the range of acceptable strategic and tactical alternatives and did not cause the representation to fall below the constitutionally acceptable level mandated by *Strickland*." *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998).

Of course, counsel was stymied in his efforts by the video evidence, the petitioner's behavior in court, and his trial testimony that he was holding a cloth to make the real shooter think he had a gun. "[U]ndetailed and unsubstantiated assertions that counsel failed to conduct a proper investigation have consistently been held insufficient to satisfy either *Strickland* prong." *Powers v. Lord,* 462 F. Supp. 2d 371, 381 (W.D.N.Y. 2006) (citing *Polanco v. United States,* No. 99-CV-5739, 2000 WL 1072303, at *10 (S.D.N.Y. Aug. 3, 2000)); *see also Lamberti v. United States,* No. 95-CV-1557, 1998 WL 118172, at *2 (S.D.N.Y. Mar. 13, 1998) (rejecting Sixth Amendment claim based on failure to investigate or communicate with petitioner as "vague and

conclusory . . . [they] do not identify counsel's asserted failings with any specificity or show how any different conduct might have changed the result"). In short, the jury convicted the petitioner not because of some shortcoming on his lawyer's part, but because of the compelling evidence of his guilt. *See Luciano*, 158 F.3d at 660. Judge Goldberg's decision denying the petitioner's ineffective assistance of counsel claim was neither contrary to nor an unreasonable application of clearly established law. Therefore, this claim is denied.

### E. Trial Court's Evidentiary Rulings

As he did in his 440.10 motion, the petitioner challenges the following evidentiary rulings: limitations on confronting witnesses with grand jury testimony, the admission of a crime scene photograph, and permitting witnesses to refer to Powerful Williams—the petitioner's accomplice—by name.

Citing N.Y. C.P.L. § 440.10(2)(c), Judge Goldberg rejected these claims because they were "sufficiently on the record to have been reviewed on his direct appeal." (ECF No. 9-8 at 1074.) These claims are thus procedurally barred. *See Aparicio v. Artuz*, 269 F.3d 78, 93 (2d Cir. 2001); *accord Pearson v. Rock*, 12-CV-3505, 2015 U.S. Dist. LEXIS 98156, *21 (E.D.N.Y. July 24, 2015) (rejection of claim pursuant to C.P.L. § 440.10(2)(c) is adequate and independent state ground). The petitioner has not established either cause for the procedural default and ensuing prejudice or that denying these claims would result in a fundamental miscarriage of justice. *See Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (citations omitted); *Edwards v. Superintendent, Southport C.F.*, 991 F. Supp. 2d 348, 367 (E.D.N.Y. 2013) (citations omitted).

In any event, a state court's evidentiary rulings typically do not present constitutional issues cognizable by a federal court. *See generally* 28 U.S.C. § 2254; *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("federal habeas corpus relief does not lie for errors of state law"). Courts

"acknowledge our traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane v. Kentucky*, 476 U.S. 683, 689 (1986). A federal habeas petitioner cannot prevail on a claim that a state court's evidentiary error deprived him of due process unless he shows "that the error was so pervasive as to have denied him a fundamentally fair trial." *Singletary v. Fischer*, 227 F.R.D. 209, 223 (E.D.N.Y. 2003) (citing *United States v. Agurs*, 427 U.S. 97, 108 (1976). The standard is whether the erroneous evidentiary decision, "viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it. In short, it must have been 'crucial, critical, highly significant.'" *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir.1985) (quoting *Nettles v. Wainwright*, 677 F.2d 410, 414-15 (5th Cir. 1982)).

None of the rulings the petitioner challenges come close to meeting this standard. Under the Sixth Amendment's Confrontation Clause, a criminal defendant "must have a meaningful opportunity to cross-examine witnesses against him." *Alvarez v. Ercole*, 763 F.3d 223, 229-30 (2d Cir. 2014) (citations and quotations omitted). The Constitution "does not, however, guarantee unfettered cross-examination . . . [t]he trial court has 'broad discretion . . . to impose reasonable limits on . . . cross examination based on concerns about . . . harassment, prejudice, confusion of the issues, . . . or interrogation that is repetitive or only marginally relevant.'" *Id.* at 229-30 (citations and quotations omitted). In order to grant a habeas petition on these grounds, the Court would have to conclude that "the trial court abused its broad discretion by precluding cross-examination . . ." and that "the [state appellate court] could not reasonably have determined that the [evidence] would have been excludable had the trial court properly applied 'standard rules of evidence.'" *Id.* at 230. The error must also have had a "substantial and

injurious effect or influence in determining the jury's verdict." *Brinson*, 547 F.3d at 395

(quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)) (quotation marks omitted).

The trial court did not abuse its discretion by sustaining the prosecution's objections to

defense counsel's cross-examination of Gary Walls and Deshawn Leggett. Both lines of

questioning were improper under state law. Defense counsel cross-examined Leggett about

inconsistencies between his testimony and the grand jury testimony of Gary Walls, who had not

yet testified. (ECF No. 9-1 at 303.) The trial court precluded the questions because they were

improper. Of course, counsel could confront Walls with his own grand jury testimony, but he

could not use Walls' grand jury testimony to impeach Leggett. *See generally* N.Y. Crim. Proc.

Law § 60.35. The trial court later sustained objections to defense counsel's attempts to impeach

Walls with his own prior grand jury testimony, but only because counsel did not employ the

proper form; "[t]o set the stage for the prior inconsistency, the questioner must first inform the

witness of the circumstances surrounding the making of the statement, and inquire of him

whether he in fact made it." *People v. Wise*, 46 N.Y.2d 321, 326 (1978).[9] Defense counsel did

not direct the witness to his specific testimony or lay the proper foundation; instead, he just

asked if his trial testimony was inconsistent with what he told the grand jury. Thus, Judge

Goldberg properly sustained the prosecutor's objections.

The petitioner also objects to the admission of a photograph of a building where the

shooting occurred; Deshawn Leggett testified that the photograph included a fence that had not

been there on the date of the shooting. (ECF No. 9-1 at 276-279.) Under New York law,

---

[9] In his motion to vacate, which the petitioner incorporated into this petition, he appears to claim that the prosecution gave the victim some kind of consideration for a prior drug case in exchange for his testimony. (ECF No. 1 at 77.) There is no evidence in the record supporting this allegation, or that defense counsel attempted to cross-examine the victim about these facts and was precluded from doing so.

"photographs are authenticated by testimony of a person familiar with the object portrayed therein." *Cochrane v. McGinnis*, 50 F. App'x 478, 480 (2d Cir. 2002) (summary order) (quoting *People v. Brown*, 216 A.D.2d 737, 738 (2d Dep't 1995)). The petitioner does not dispute the photograph's authenticity or explain why the trial court should not have admitted them. Moreover, there is no evidence that there was anything unfairly prejudicial about the photographs.

Finally, the petitioner argues that the court should have precluded any mention of his co-defendant, Powerful Williams. (ECF No. 1 at 82.) "A federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *see Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). The petitioner's argument is based solely on state law governing the admissibility of evidence regarding a criminal defendant's accomplice or co-defendant. *See People v. Jenkins*, 305 A.D.2d 287, 288 (1st Dep't 2003) (error to admit eyewitness testimony about defendant's accomplice to bolster eyewitness' identification of the defendant); *People v. Samuels*, 22 A.D.3d 507, 508 (2d Dep't 2005) (improper to admit evidence to witness's identification of accomplice). The references to Williams did not violate the petitioner's constitutional rights, for there was nothing unfairly prejudicial about his name. The trial judge precluded any reference to Williams' guilty plea, something that would have been unfairly prejudicial. Moreover, the court charged the jury that Williams was not on trial and they should not speculate about what happened to him. The references to Williams were appropriate in the context of the evidence, which included video footage of the petitioner and Williams together around the time of the shooting, and the

testimony about what Williams did immediately before the shooting. (ECF No. 9-1 at 280.)[10]

Even if any of these rulings were erroneous—and they were not—the petitioner does not demonstrate that any of them had a "substantial and injurious effect or influence in determining the jury's verdict." *Brinson,* 547 F.3d at 395 (quoting *Brecht,* 507 U.S. at 637) (internal quotation marks omitted). The evidence of the petitioner's guilt was overwhelming. Accordingly, the petitioner's claims do not form a basis for relief.

### F. Prosecutorial Misconduct[11]

The petitioner claims that the prosecutor violated her obligations under *Brady v. Maryland* and made improper comments in her summation. *Brady v. Maryland,* 373 U.S. 83 (1963).

Citing N.Y. C.P.L. § 440.10(2)(c), Judge Goldberg rejected these claims because they were "sufficiently on the record to have been reviewed on the defendant's appeal." (ECF No. 9-8 at 1075.) These claims are thus procedurally barred. *See Aparicio v. Artuz,* 269 F.3d 78, 93 (2d Cir. 2001); *accord Pearson v. Rock,* 12-CV-3505, 2015 U.S. Dist. LEXIS 98156, *21 (E.D.N.Y. July 24, 2015) (rejection of claim pursuant to C.P.L. § 440.10(2)(c) is adequate and independent state ground). The petitioner has not established either cause for the procedural default and ensuing prejudice or that denying these claims would result in a fundamental miscarriage of justice.

---

[10] After Leggett mentioned Williams, the trial court at defense counsel's request instructed the jury to disregard the reference to Williams' name, to whom witnesses then referred to as a "light-skinned" black man. (*Id.* at 280:23-281:15.)

[11] The petitioner's claims about discovery under *People v. Rosario,* 173 N.E.2d 881 (N.Y. Ct. App. 1961) are state claims, and not cognizable on federal habeas review. 28 U.S.C. § 2254(a) (providing for federal habeas relief based on violations of federal law); *see also Kotler v. Woods,* 620 F. Supp. 2d 366, 395 (E.D.N.Y. 2009) ("[T]o the extent that [a state habeas] claim is based on a *Rosario* violation, it must fail.").

*Brady* requires the prosecution to disclose "evidence that is both favorable to the accused and 'material either to guilt or to punishment.'" *United States v. Bagley*, 473 U.S. 667 (1985) (quoting *Brady*, 373 U.S. at 87). To establish a *Brady* violation, a petitioner "must show that: (1) the government, either willfully or inadvertently, suppressed evidence; (2) the evidence at issue is favorable to the defendant; and (3) the failure to disclose this evidence resulted in prejudice." *U.S. v. Yuk*, 885 F.3d 57, 86 (2d Cir. 2018) (internal quotation marks omitted) (quoting *United States v. Coppa*, 267 F.3d 132, 140 (2d Cir. 2001)). Reversal is required "if there is a 'reasonable probability' that disclosure would have changed the outcome of the case, or where the suppressed evidence 'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Yuk* at 86 (quoting *Kyles v. Whitley*, 514 U.S. 419, 434-35 (1995)).

The evidence about which the petitioner complains—his recorded telephone calls—was disclosed during the trial, and the trial court ameliorated any prejudice caused by the late disclosure of the recordings by giving counsel time to review them, and by redacting irrelevant or unfairly prejudicial material. As Judge Goldberg found, "[t]here is nothing on [the recordings] that is exculpatory." (ECF No. 9-1 at 371:10-19.)

I also reject the petitioner's arguments about the prosecutor's summation references to the video of the shooting. The prosecutor said that the petitioner "was standing with the gun . . . and then turned, and fired," and that he and Williams checked to see if the gun was loaded. (*Id.* at 644:6-9.) Aside from the procedural impediment to the petitioner's claim, it is a "rare case[]" in which even improper summation comments will be deemed "so numerous" and "so prejudicial" that they support granting a habeas petition. *Floyd v. Meachum*, 907 F.2d 347, 348 (2d Cir. 1990). Here, the prosecutor's statements were fair comment on the evidence, which

demonstrated that Williams was with the petitioner right before the shooting, and that the petitioner was holding and firing a gun. I therefore deny the petitioner's claims.

### G. Post-arrest Statements

The petitioner claims that his post-arrest statements should have been suppressed because the police did not have probable cause to arrest him and did not advise him of his constitutional rights. (ECF No. 1 at 94-97.) Because Judge Goldberg suppressed the petitioner's statements, and the jury never heard about them, there is no basis for habeas relief. (ECF No. 14 at 1308:13-25.)

### H. Sufficiency of the Evidence

The petitioner also challenges the evidence as insufficient. Judge Goldberg rejected the same claim pursuant to N.Y. C.P.L. § 440.10(2)(c) because he could have raised it on his direct appeal. (ECF No. 9-8 at 1074.) This claim is therefore procedurally barred. *See Aparicio v. Artuz*, 269 F.3d 78, 93 (2d Cir. 2001); *accord Pearson v. Rock*, 12-CV-3505, 2015 U.S. Dist. LEXIS 98156, *21 (E.D.N.Y. July 24, 2015) (rejection of claim pursuant to C.P.L. § 440.10(2)(c) is adequate and independent state ground). The petitioner has not established either cause for the procedural default and ensuing prejudice or that denying these claims would result in a fundamental miscarriage of justice. *See Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (citations omitted); *Edwards v. Superintendent, Southport C.F.*, 991 F. Supp. 2d 348, 367 (E.D.N.Y. 2013) (citations omitted).

A petitioner challenging the sufficiency of the evidence faces a "high bar" in federal habeas proceedings. There are "two layers of judicial deference"—not only does the jury have broad discretion to decide the case, but a state court's decision on a sufficiency of the evidence challenge should not be overturned unless it is "objectively unreasonable." *Coleman v. Johnson*,

566 U.S. 650, 651 (2012) (citations and quotations omitted).[12] Evidence is legally sufficient if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 309, 319 (1979) (emphasis in original) (citations omitted). Federal courts considering the evidentiary sufficiency of a state conviction "must look to state law for 'the substantive elements of the criminal offense.'" *Coleman*, 566 U.S. at 654 (citing *Jackson*, 443 U.S. at 324 n.16).

Viewing the facts in the light most favorable to the prosecution, there is no question that a rational trier of fact could have found that the evidence established the petitioner's guilt beyond a reasonable doubt. Video surveillance tapes showed the petitioner loading a gun, leaving 130 Moore Street with his accomplice's help, and shooting the victim. The petitioner admitted that he was the person on the video. The jury's decision to reject his claim that he was actually holding a cloth and that someone else shot the victim—which the trial court characterized as "insulting" and "absurd"—was understandable given the evidence against the petitioner. Therefore, I deny the petitioner's evidentiary sufficiency claim.

I. Incompetence

The petitioner claims that he was incompetent to stand trial, a claim he also raised in his motion to vacate. The petitioner cites his outbursts on the record during the trial—his objections, interruptions, and arguments in the face of repeated warnings that Judge Goldberg would remove him from the courtroom. (ECF No. 9-1 at 878-880.)

Subjecting a mentally incompetent person to trial is a due process violation. *Pate v.*

---

[12] "[O]n direct appeal, 'it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011)).

*Robinson*, 383 U.S. 375 (1966). Under federal law, a defendant is mentally competent if he has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960). Where there is evidence that a defendant was mentally incompetent at the time of trial, a federal court can grant a habeas petition if the state court should have held a competency hearing, even if the issue is unpreserved. *Pate*, 383 U.S. at 386; *Silverstein v. Henderson*, 706 F.2d 361, 369 (2d Cir. 1983), *cert. denied*, 464 U.S. 864 (1983).

At no point did the petitioner or his attorney ever suggest that he was mentally unfit to stand trial. Nor did he raise the claim on direct appeal. Nevertheless, I review the claim *de novo. See Silverstein,* 706 F.2d at 366-67; *Moore v. Conway*, No. 10-CV-3202, 2011 WL 73123, at *4 (E.D.N.Y. Jan. 10, 2011). Nothing about the petitioner's behavior during the trial required the trial judge to hold a competency hearing *sua sponte*. Indeed, Judge Goldberg rejected the petitioner's post-trial "self-serving claim that he was 'incompetent' to stand trial," finding that his "disruptive behavior and consequent exclusion from the courtroom was due to a choice he made to express his dissatisfaction with the proceedings." (ECF No. 9-1 at 1079.) I find no basis for disturbing that ruling. Nothing in the record suggests that the petitioner did not understand the charges against him or was unable to consult with his lawyer. *Pallonetti v. Racette*, No. 11-CV-3563, 2014 WL 4161957 (E.D.N.Y. Aug. 19, 2014) (denying defendant's due process claim that court erred by not ordering competency hearing *sua sponte* because there was "absolutely no evidence in the record to suggest" that the defendant was not competent to stand trial). The substance of the petitioner's outbursts demonstrates that he "ha[d] sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and

26

has a rational as well as factual understanding of the proceedings against him." *United States v. Powell*, 249 F. Supp. 3d 617, 624 (E.D.N.Y. April 28, 2017) (quotation marks omitted). He frequently interrupted with proposed objections, requested numerous evidentiary hearings, testified on his own behalf, and demanded new representation when his attorney refused to adopt his *pro se* motions. On this record, there is "no reasonable ground to question petitioner's competency." *Moore,* 2011 WL 73123, at *5 (E.D.N.Y. Jan. 10, 2011). His conclusory allegations to the contrary are not sufficient, and I therefore deny his claim.

## CONCLUSION

Accordingly, the petition for a writ of habeas corpus is denied in its entirety. The case is dismissed. A certificate of appealability will not be issued. *See* 28 U.S.C. § 2253(c). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith.

**SO ORDERED.**

s/Ann M. Donnelly

Ann M. Donnelly
United States District Judge

Dated: Brooklyn, New York
    March 2, 2020